**EL PASO NATURAL GAS CO., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 88–4510.

United States Court of Appeals, Fifth Circuit.

Aug. 24, 1989.

Donald J. McIver, Richard O. Baish, El Paso, Tex., Richard C. Green, Mary Anne Mason, Rush Moody, Jr., Washington, D.C., Scott D. Fobes, El Paso Natural Gas Co., El Paso, Tex., for El Paso Natural Gas Co.

Joanne Leveque, Jerome Feit, Sol., F.E. R.C., Washington, D.C., for F.E.R.C.

William I. Harkaway, Steven J. Kalish, Washington, D.C., for Southeast Gas Corp.

Lindsey How–Downing, San Francisco, Cal., for Pacific Gas and Elec. Co.

Douglas Kent Porter, Los Angeles, Cal., for Southern California Gas Co.

Harvey Y. Morris, San Francisco, Cal., for Public Utilities Com'n St. of Cal.

Howard L. Nelson, Washington, D.C., for The City of Willcox, Arizona and Arizona Elec. Power Co-op., Inc.

Susan N. Kelly, John P. Gregg, Washington, D.C., for El Paso Mun. Customer Group.

Irving Jacob Golub, Houston, Tex., for Gas Co. of New Mexico.

Before CLARK, Chief Judge,
BROWN, and JOHNSON, Circuit
Judges.

JOHNSON, Circuit Judge:

Petitioner El Paso Natural Gas Company (El Paso) appeals a decision of the Federal Energy Regulatory Commission (the Commission) interpreting a Stipulation and Agreement previously entered into between El Paso and the Commission in 1985. Persuaded that the Commission did not err in concluding that, under the terms of the 1985 settlement agreement, El Paso was not entitled to an offset in its rate adjustment by virtue of the repeal by the 1986 Tax Reform Act of the investment tax credit, we affirm that conclusion. We reverse and remand, however, those portions of the Commission orders concluding that El Paso was not entitled to an offset in its rate adjustment for the changes effected by the 1986 Tax Act in the modified accelerated cost recovery system.

## I. FACTS AND PROCEDURAL HISTORY

In 1985, petitioner El Paso and the Commission entered into a Stipulation and Agreement to resolve a rate proceeding initiated by El Paso in 1984 to obtain a rate increase pursuant to Section 4 of the Natural Gas Act (NGA). The particular provision of the Stipulation and Agreement (1985 settlement) at issue in the instant appeal is article XII, which reads:

If, at any time during the period of effectiveness of the Docket No. RP85–58–000 rates, the current statutory Federal income tax rate should be changed by legislation (including, but not limited to, an increase or reduction of the basic tax rates, imposition of a surcharge, or enactment of legislation having the effect of a change in said current tax rate or rates), or if any new Federal legislation is enacted that would cause El Paso to pay additional taxes (including, but not limited to, a "Superfund Tax," a Value Added Tax," or a "Minimum Tax") or fewer taxes, then such change or changes shall be reflected by an upward or downward adjustment, as appropriate, in El Paso's jurisdictional rates. Such change in El Paso's jurisdictional rates shall be $0.0017 per dth for each one (1) percent increase or decrease in the current statutory Federal income tax rate from the current rate of forty-six (46) percent. *The $0.0017 per dth rate per one (1) percent tax rate change shall be increased or decreased by any jurisdictional rate impact of other changes in the Federal tax legislation which causes El Paso to pay a greater or lesser amount of Federal taxes.*

Essentially, article XII provides that "if the statutory federal income tax rate is changed by legislation, or if any new federal legislation causes El Paso to pay additional taxes, such changes are to be reflected by an upward or downward adjustment, as appropriate, in El Paso's jurisdictional rates." Commission Order, Dec. 16, 1987, at p. 1.

Thereafter, Congress passed the Tax Reform Act of 1986 (1986 Tax Act) which reduced the federal corporate income tax rate from forty-six percent to thirty-four percent to be effective July 1, 1987. On December 9, 1986, El Paso, in accordance with article XII of the 1985 settlement, filed a letter with the Commission stating that, although the 1986 Tax Act lowered its overall corporate income tax rate by twelve percent, that reduction was offset by other changes in the Tax Act which effectively increased its revenue requirement. As a result, El Paso calculated that the total impact of the 1986 Tax Act on its jurisdictional rates was less than $1,000,000 and thus, no change in the rates of El Paso was warranted as of January 1, 1987. Specifically, El Paso identified four changes in the 1986 Tax Act which El Paso asserted should be offset against the corporate tax rate reduction in computing the overall change in its tax liability for the purpose of adjusting its rates. At this juncture in the proceedings, two customers of El Paso, intervenors Pacific Gas and Electric Company and Southern California Gas Company, protested the position taken by El Paso in relation to the 1986 Tax Act and the adjustment of its rates.

After reviewing documentation provided by El Paso as to the effect of the 1986 Tax Act on its rates, the Commission, in an order issued December 16, 1987, concluded

that El Paso was not entitled to an offset against the corporate tax rate reduction for two of the four changes in the 1986 Tax Act. In particular, the Commission disallowed an offset of $6,103,000 for 1987 which El Paso argued was warranted due to a repeal by the 1986 Tax Act of the investment tax credit (ITC). Further, the Commission concluded that El Paso was not entitled to an offset of approximately $287,000 for changes in the tax liability of El Paso effected by the 1986 Tax Act as to the modified accelerated cost recovery system (MACRS) for certain qualified properties. The Commission did, however, allow El Paso an offset based on the fact that the 1986 Tax Act limited the deductions for business meals and entertainment expenses. The Commission also allowed El Paso to recognize as an offset the new environment superfund tax imposed on the income of a corporation. El Paso subsequently filed a petition for rehearing of the December 16 order of the Commission which the Commission denied. El Paso now appeals the above orders by the Commission, but only those portions addressing the proposed offsets for the ITC and MACRS. For the following reasons, this Court affirms in part and reverses in part the orders of the Commission.

## II. DISCUSSION

In construing the terms of the 1985 settlement, this Court applies general principles of contract interpretation. *See Mid Louisiana Gas Co. v. FERC,* 780 F.2d 1238, 1242–43 (5th Cir.1986). Nevertheless, "where the understanding of the problem is enhanced by the agency's expert understanding of the industry," this Court may defer to the views of the agency although those views are not conclusive. *Id.* at 1243 (quoting *Coca–Cola Co. v. Atchison, Topeka and Santa Fe Ry.,* 608 F.2d 213, 222 (5th Cir.1979)). In support of its construction of the 1985 settlement in the instant case, the Commission relies not only on the language of the 1985 settlement itself but also on agency expertise; therefore, some deference to the interpretation

by the Commission of the 1985 settlement is warranted.

As noted previously, the pertinent provision of the 1985 settlement which is at issue in the instant appeal is article XII which permits El Paso to reflect, by an upward or downward adjustment in its jurisdictional rates, changes in its tax liability over a certain period of time. Thus, if the tax liability of El Paso is increased, article XII allows El Paso to pass through the costs of such an increase to its customers by adjusting its rates. Provisions such as article XII are commonly referred to in the industry as "tax trackers" since such provisions track changes in the federal income tax laws.

In the instant appeal, El Paso initially maintains that it should be entitled to an offset in its rate adjustment which reflects the repeal by the 1986 Tax Act of the ITC. In this regard, El Paso asserts that the repeal of the ITC effectively increased its tax liability by approximately $6,000,000. Accordingly, El Paso states that the $6,000,000 increase should be offset against the twelve percent corporate tax rate reduction effected by the 1986 Tax Act which results in a net change of less than $1,000,000 in its tax liability for 1987.

The Commission, along with intervenors Pacific Gas and Southern Gas, however, maintain that the changes in tax liability which El Paso is entitled to have reflected in its rate adjustment under article XII are only those changes which have a *jurisdictional rate impact.* The Commission and intervenors further argue that, because El Paso did not flow through the benefits of the ITC to its customers when the tax credit was in effect, the ITC did not affect the jurisdictional rate base of El Paso; therefore, El Paso should not now be entitled to effectively pass on the costs of its increased tax liability to its customers as a result of the repeal of the ITC by counting that increased liability as an offset against the twelve percent corporate tax rate reduction.[1]

1. The reason that El Paso did not flow through any of the benefits of the ITC to its customers in

the years prior to the 1986 Tax Act is because El Paso elected to apply the "short supply" provi-

In its order disallowing the proposed off-set by El Paso for the ITC in its rate adjustment, the Commission, focusing on the "jurisdictional rate impact" language in article XII of the 1985 settlement, concluded that "[s]ince no rate base adjustments were previously made based on the ITC in calculating rates, repeal of the ITC has no jurisdictional rate impact, and El Paso's increase in revenue requirement based on the repeal of the ITC must be disallowed." Commission Order, Dec. 16, at pp. 5–6. The above reasoning by the Commission is compelling, as it would seem inconsistent and impractical to allow El Paso to effectively pass on the cost of its increased tax liability due to the repeal of the ITC when its customers never really obtained any benefits from the ITC in previous years.

El Paso, however, argues that the Commission has placed too much emphasis on the "jurisdictional rate impact" language in article XII. In this regard, El Paso maintains that the intent of the parties in entering into the 1985 settlement was to provide for rate adjustments in the event of *any* increase or decrease in the tax liability of El Paso regardless of whether or not those changes in tax liability affected the actual rate base of El Paso. El Paso further argues that the "jurisdictional rate impact" language in article XII refers to the distinction between its jurisdictional and nonjurisdictional customers, and does not support the position of the Commission that any changes in the tax liability of El Paso must affect the rate base of El Paso before being allowed as offsets under article XII.

The above position by El Paso, however, is not tenable in view of the plain language of article XII which provides that, "[t]he $0.0017 per dth rate per one (1) percent tax rate change shall be increased or decreased by any *jurisdictional rate impact* of other changes in the Federal tax legislation which causes El Paso to pay a greater or lesser amount of Federal taxes." Reviewing the above language, we are persuaded that the argument of El Paso regarding the definition of "jurisdictional" in the phrase

"jurisdictional rate impact" is specious as it ignores the last two words in the phrase— "rate impact"—which support the position of the Commission that any changes in tax liability for which El Paso seeks an offset under article XII must, as a prerequisite, affect the jurisdictional rate base of El Paso. Accordingly, we reject the contention of El Paso in this regard.

█ El Paso next maintains that the Commission erred by disallowing an offset for the impact of the changes to the MACRS in the 1986 Tax Act. In its orders disallowing the offset, the Commission recognized that El Paso incurred a $287,000 increased tax liability as a result of the fact that it had less deferred taxes under the MACRS as modified by the new tax law. Nevertheless, the Commission concluded that "[r]ecognition of the decrease in deferred income tax will be recognized in future rate cases by a corresponding increase in the rate base (less a deferred tax offset against the rate base)." Commission Order, Dec. 16 at p. 4. The above reasoning by the Commission is flawed, however, as any changes in the amount of taxes which El Paso may defer as a result of the depreciation schedule changes in the 1986 Tax Act directly affect the rate base of El Paso. Accordingly, since the changes to the MACRS effected by the 1986 Tax Act have a jurisdictional rate impact within the meaning of article XII of the 1985 settlement, the Commission should have allowed an offset in the rate adjustment of El Paso for those changes.

In sum, applying the plain language of article XII, we affirm those portions of the orders of the Commission disallowing the proposed offset for El Paso in its rate adjustment due to its increased tax liability realized as a result of the repeal of the ITC. In doing so, specific reference is made to the "jurisdictional rate impact" language of article XII which supports the position of the Commission that any offsets allowed under article XII must, as a pre-

sion of Section 46(f)(1) of the Internal Revenue Code. Pursuant to the above provision, El Paso was able to retain all benefits of the ITC without

flowing such benefits through to its customers, and no adjustments to the rate base of El Paso were therefore made to account for the ITC.

requisite, affect the rate base of El Paso. Since the benefits of the ITC were never figured into the rate base of El Paso initially, it necessarily follows that a repeal of that tax benefit would not affect the rate base and therefore should not be offset against the twelve percent corporate tax rate reduction in adjusting the rates of El Paso. We, however, reverse those portions of the Commission orders disallowing the offset for the changes in the MACRS effected by the 1986 Tax Act.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.