United States Court of Appeals,

Fifth Circuit.

No. 94-40246.

NICOR EXPLORATION COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

April 27, 1995.

Petition for Review of an Order of the Federal Energy Regulatory Commission.

Before REYNALDO G. GARZA, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

NICOR Exploration Company petitions this court to review a Federal Energy Regulatory Commission order granting Robert W. Scarth authority to collect incentive-based rates for natural gas pursuant to § 108 of the Natural Gas Policy Act ("NGPA"), 15 U.S.C. §§ 3301 *et seq.* The commission concluded that the "area rate clauses" contained in gas supply contracts signed by NICOR and Scarth's predecessors authorize Scarth to collect § 108 rates. The central issue raised by NICOR is whether the Commission's interpretation of the contracts conflicts with Fifth Circuit precedent and Oklahoma contract law. We agree that the Commission failed to properly apply state contract law in construing the area rate clauses and that, under state law, Scarth failed to satisfy his burden of proof. Accordingly, we vacate the Commission's order and remand the case to the Commission for entry of an order denying Scarth's request for a rate increase.

I.

In 1970, NICOR signed three gas supply contracts with Scarth's predecessors, GHK Co., Sun Oil Co., and the Amerada Hess Corporation (the "Producers"). Under the terms of the contracts, the Producers agreed to sell NICOR gas from the Green # 1-1 Well located in Beckham County, Oklahoma. Between 1988 and 1989, Scarth purchased the Producers' interests in the three contracts and requested the Commission to reclassify the Green Well as a "stripper" well so that he could collect higher incentive-based rates under § 108 of the NGPA. NICOR filed a petition with the Commission opposing Scarth's rate increase.

The Supreme Court's *Mobile-Sierra* Doctrine prohibits the Commission from granting a rate increase to a producer unless the producer's contract authorizes a rate increase. *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *FPC v. Sierra Pacific Power Co.,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). While NICOR's contracts provided for a fixed initial price per unit of gas, each contract contained an area rate clause allowing the Producers to increase the contract price under certain circumstances. Scarth contends that these area rate clauses authorize the rate increase he requests. The area rate clauses are similarly worded:

> If the Federal Power Commission, or any successor governmental authority having jurisdiction in the premises, shall at any time hereafter prescribe, for the area in which the contract is located, a higher, applicable, just and reasonable area rate for the purchase of gas than the price herein provided to be paid, then the price to be paid by the Buyer to Seller for gas delivered under the provisions of this Agreement shall be increased to equal such higher price effective as of the date such higher price is made applicable to the gas sold

2

hereunder.[1]

These clauses thus authorized the Producers to increase the contract price to match the maximum rate for the area established by the Federal Power Commission ("FPC"), the Commission's predecessor.

The scope of area rate clauses became a matter of extensive litigation with the passage of the NGPA in 1978. Prior to 1978, the FPC established "just and reasonable" area rates based on the producer's cost of service. The NGPA eliminated the FPC's power to set area rates and, in its place, established nation-wide statutory rate ceilings. Section 104 of the NGPA essentially adopted the FPC's cost-based methodology for setting the rates of most natural gas committed or dedicated to interstate commerce prior to 1978. 15 U.S.C. § 3314. However, § 108 of the NGPA establishes special "incentive-based" rates for low output "stripper" wells. 15 U.S.C. § 3318. These incentive-based rates are significantly higher than § 104's cost-based rates. Attempts by producers to obtain § 108 rates raised the issue of whether pre-NGPA area rate clauses authorized producers to collect higher NGPA incentive-based rates.

The Commission addressed the scope of pre-NGPA area rate clauses in three agency orders, Orders 23, 23-A, and 23-B ("Order 23"),[2] and in *Independent Oil & Gas Ass'n of W. Virginia,* 10 FERC

_____

[1]The only substantive difference is that the area rate clause in the Amerada Hess contract omits the phrase "just and reasonable."

[2]Order 23, 6 FERC (CCH) ¶ 61,229 (March 13, 1979); Order 23-A, 7 FERC (CCH) ¶ 61,247 (June 12, 1979); Order 23-B, 8 FERC (CCH) ¶ 61,130 (Aug. 6, 1979). The Commission promulgated Rule

3

¶ 61,214 (1980) ("Opinion 77"). In Order 23, the Commission concluded that neither the language of the NGPA nor the Commission's regulations precluded producers from relying on pre-NGPA area rate clauses to obtain higher rates under § 108 of the NGPA. 6 FERC (CCH) ¶ 61,229. The Commission further concluded, however, that variations in the language and circumstances of these clauses prevented a uniform construction that would apply to all contracts. *Id.* The Commission thus opted for a case-by-case approach to interpreting area rate clauses. Since area rate clauses are "inherently ambiguous", the Commission decided that the focal point of its inquiry should be the mutual intent of the parties at the time the contract was signed. *Id.* In other words, the Commission would attempt to glean from extrinsic evidence whether the parties would have agreed to incentive-based rates if these rates had been available at the time the contract was signed. The Commission also established procedures for purchasers and third parties to protest rate increase requests. *Id.*

In Opinion 77, the Commission formulated specific guidelines for interpreting area rate clauses. Opinion 77 establishes a two-part inquiry for determining the parties' intent. First, the Commission must consider extrinsic evidence probative of intent, including the parties' negotiations, course of dealing, and other

---

23 after extensive feedback and comment from gas producers, pipelines, and local distributors. The Fifth Circuit upheld the order in *Pennzoil Co. v. FERC,* 645 F.2d 360, 384 (5th Cir.1981) ("*Pennzoil I* ").

evidence of the circumstances surrounding the contract's execution. 10 FERC at 61,397. If the Commission finds "no reliable and probative evidence of intent" or if "such evidence is inconclusive," however, Opinion 77 requires the Commission to look to the language of the area rate clause and apply a three-prong formula to decide whether the clause allows § 108 rates:

> In such situations, we will generally conclude that a contract containing an area or national rate clause does not authorize collection of all NGPA rates if it contains the following disqualifying terms:
>
> (1) it refers to rates established or prescribed by an administrative body;
>
> (2) it couples the reference to administrative action with a reference to the Natural Gas Act or the "just and reasonable" standard of that Act; and
>
> (3) it contains no additional language which has the effect of uncoupling the link between agency action and the statutory standard of the Natural Gas Act.

*Id.* at 61,398. According to the Commission, references to both administrative rate-setting and the NGA's "just and reasonable" standard generally indicate that the parties intend to limit price increases to cost-based rates. *Id.* On the other hand, the Commission concluded that language severing the link between administrative action and a cost-based standard suggests that the parties intend to allow price increases to the maximum rate allowed by statute, whether cost-based or incentive-based. *Id.*

Applying Opinion 77's methodology to NICOR's contracts, an administrative law judge ("ALJ") concluded that the area rate clauses did not authorize Scarth to collect § 108 incentive-based rates. 56 FERC ¶ 63,023 at 65,094 (1991). According to the ALJ,

5

the extrinsic evidence of the parties' mutual intent failed to support Scarth's contention that the parties intended the area rate clauses to authorize rate increases up to the maximum level permitted by law:

> The course of performance evidence, as well as the evidence on the other items involving reliable and probative extrinsic evidence of the parties' intent, is clearly insufficient to support Scarth's contention that the [area rate clauses] in issue entitle it to collect payment of section 108 NGPA ceiling prices.... In sum, such evidence not only does not suffice to overcome Scarth's admitted burden of demonstrating ... the contracting parties' intent to pay and collect incentive-based NGPA section 108 rates, but rather supports the conclusion that the [clauses] in question contemplated payment and collection of only cost-based prices.

The ALJ also applied Opinion 77's three-prong formula and found that the language of the area rate clauses satisfied the formula's three elements.

The Commission initially affirmed the ALJ's order. 58 FERC ¶ 61,203 (1992). On motion for rehearing, however, the Commission reversed its earlier order and concluded that NICOR's area rate clauses authorize Scarth to collect incentive-based rates under § 108. 63 FERC ¶ 61,034 at 61,184—61,186 (1993). The Commission first found that the parties' extrinsic evidence of mutual intent was inconclusive as to whether they intended the area rate clauses to authorize rate increases up to the maximum level permitted by law. The Commission then applied Opinion 77's three-part formula to the language of the area rate clauses. The Commission concluded that the area rate clauses authorized § 108 rates because each clause failed to satisfy one or more elements of Opinion 77's formula. *Id.*

6

According to the Commission, the area rate clause in the Amerada Hess contract failed to refer to the NGA or to the "just and reasonable" standard as required by the second prong of the formula. The Commission further concluded that the area rate clauses in the GHK and Sun contracts similarly allowed § 108 rates because the presence of the phrase "any successor or governmental authority" uncoupled the link between the contracts' references to administrative action and the "just and reasonable" standard.[3] According to the Commission, this language is consistent with Congressionally-established rates under the NGPA.

NICOR requested judicial review of the Commission's final order pursuant to 15 U.S.C. §§ 717r(b) and 3416(a)(4). We granted Robert W. Scarth's motion to intervene in support of Commission's order.

II.

NICOR maintains that the Commission's application of Opinion 77's methodology in the present case conflicts with Fifth Circuit precedent and Oklahoma contract law. NICOR contends that the Commission failed to follow state law in construing the area rate clauses as required by this court's decision in *Pennzoil Co. v.*

---

[3]The Commission expressly addressed the impact of this type of language in Opinion 77:

> Such an uncoupling could occur, for example, where a reference to the Natural Gas Act or the "just and reasonable" standard is supplemented by the phrase "or successor statutory authority" or words of similar import. In this circumstance, the parties commit their contractual destiny to a change in the statutory scheme and give advance acceptance to the outcome of the legislative process.

7

*FERC,* 645 F.2d 360, 384 (5th Cir.1981) ("*Pennzoil I* "). Before addressing the merits of NICOR's petition, however, we must first address a threshold jurisdictional issue raised by Scarth.

## A.

As a preliminary matter, Scarth questions whether NICOR properly preserved the arguments raised in its petition. Scarth contends that NICOR waived these arguments when it failed to file any objections to the ALJ's initial order. Although the ALJ ruled in favor of NICOR, Scarth points out that the ALJ relied on the same methodology that NICOR now assails.

Scarth bases his waiver argument on 15 U.S.C. § 717r(b). Section 717r(b) grants courts of appeal original jurisdiction to review final orders issued by the Commission. However, this section further provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing." This waiver provision is construed as a strict jurisdictional limitation on this court's power to review the Commission's orders. *Tennessee Gas Pipeline Co. v. FERC,* 871 F.2d 1099, 1107 (D.C.Cir.1989).

Our review of the record persuades us that Scarth's waiver argument is without merit. Although NICOR failed to raise any objections to the ALJ's application of Order 77 or to the Commission's initial order affirming the ALJ's decision, NICOR raised its objections in a motion for rehearing following the Commission's final order reversing the ALJ and ruling against

8

NICOR. Until that point in the proceeding, NICOR was the prevailing party. We reject Scarth's claim that § 717r(b) requires a prevailing party to file objections to a favorable ruling by an ALJ in order to preserve its right to appeal if the ALJ's decision is later reversed by the Commission. As long as a party in Nicor's position presents its objections to the Commission in a timely motion for rehearing, § 717r(b)'s requirements are satisfied. We therefore conclude that NICOR properly preserved the issues raised in its petition by timely raising its objections in its motion for rehearing following the Commission's final order. We now turn to the merits of NICOR's argument that the Commission failed to follow Oklahoma law in interpreting the area rate clauses.

B.

In *Pennzoil I,* we held that the Commission must apply state contract law in construing gas supply contracts. 645 F.2d at 387. While the court recognized that the Commission may formulate and apply "general principles of contract law" to construe area rate clauses, "specific determinations of contractual authority in the [Commission's] protest procedures must take account of and follow any differences with general contract law that the appropriate state contract law may have." *Id.* at 383-84. In deciding which state's law applies, the Commission should apply the state law that would "govern the parties' dealings were there no regulation at all of the contract's subject matter." *Id.* at 387.

NICOR contends that the Commission's application of Opinion 77's interpretive standards runs afoul of *Pennzoil I* because it is

9

inconsistent with Oklahoma contract law. NICOR focusses on two aspects of the Commission's methodology that it argues are inconsistent with Oklahoma contract law. First, NICOR faults the Commission for basing its interpretation solely on language in the area rate clauses that the Commission admits is ambiguous without also considering the extrinsic evidence of the parties' intent. Second, NICOR contends that the Commission's methodology essentially relieved Scarth of his burden of proving that the area rate clauses permit § 108 rates.

We must first address NICOR's contention that Oklahoma contract law governs the interpretation of the area rate clauses at issue. In *Pennzoil I,* we held that the choice of which state's law to apply "is properly a matter within federal common law." 645 F.2d at 387. NICOR contends that Oklahoma law governs because the three contracts were negotiated and signed in Oklahoma, and because the subject matter of the contracts concerns gas produced from an Oklahoma well. Moreover, neither Scarth nor the Commission dispute the applicability of Oklahoma law, and none of the contracts contain forum selection clauses.

Although we are not bound by Oklahoma choice of law rules, these rules may guide us in deciding whether Oklahoma law should apply in the present case. Oklahoma choice of law rules for contracts require courts to apply "the law of the state (1) chosen by the parties, (2) where the contract was entered into, or (3) the place of performance if indicated in the contract." *Moore v. Subaru of America,* 891 F.2d 1445, 1449 (10th Cir.1989) (internal

10

citations omitted). Because of Oklahoma's extensive contacts with the three contracts, we agree that Oklahoma law should apply.

Turning to the Commission's application of Oklahoma law, we generally do not defer to the Commission's interpretation of gas supply contracts unless the Commission relied on its factual or technical expertise in reaching its conclusions. *Tennessee Gas Pipeline Co. v. FERC,* 17 F.3d 98, 102 (5th Cir.1994). Deference is not appropriate where the Commission relies "solely on the words of the contract," or where the central issue before the court is the Commission's application of state law. *Id.; Pennzoil Co. v. FERC,* 789 F.2d 1128, 1135 (5th Cir.1986) ("*Pennzoil II* "). In such cases, the construction of a contract is not "enhanced by the agency's expert understanding of the industry." *El Paso Natural Gas Co. v. FERC,* 881 F.2d 161, 164 (5th Cir.1989). Because NICOR's objections focus on the Commission's application of Oklahoma state contract law, the Commission's construction of the area rate clauses in this case is not entitled to deference. We therefore review the Commission's order *de novo.*

We agree with NICOR that the Commission's application of Opinion 77 to the present case conflicts with Oklahoma contract law. Oklahoma law directs courts to consider extrinsic evidence of the parties' mutual intent in cases where the language of a contract is ambiguous. *See Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985); Okla.Stat.Ann. tit. 15, § 152 (West 1993). Extrinsic evidence relevant to determining the parties' intent includes the circumstances surrounding the

11

execution of the contract and the parties' negotiations. *Public Service Co. of Okla. v. Home Builders Ass'n of Realtors, Inc.,* 554 P.2d 1181 (Okla.1976). Oklahoma's version of the Uniform Commercial Code ("UCC") similarly provides that courts should construe ambiguous contracts with reference to the parties' course of dealing and course of conduct. Okla.Stat.Ann. tit. 12A, §§ 1-205, 2-202.

The Commission failed, however, to give any weight to the extrinsic evidence of the parties' intent in concluding that NICOR's area rate clauses authorized § 108 rates. While the Commission initially considered extrinsic evidence concerning the parties' negotiations and course of dealing, the Commission concluded that this evidence was inconclusive. The Commission then construed the area rate clauses solely on the basis of the language of the clauses and Opinion 77's three-part formula:

> Since the Commission found that none of the parties produced such evidence of mutual intent, the Commission affirmed the ALJ to that extent and, like the ALJ, resolved the matter solely by application of the interpretive standards.

66 FERC at 61,769.

In construing the language of area rate clauses, however, the Commission must consider "*all* evidence—contract language, oral and written extrinsic evidence and evidence of course of performance." *Hunt Oil Co. v. FERC,* 853 F.2d 1226, 1237 (5th Cir.1988) (emphasis in original). This evidence must "be *balanced* to determine the parties' intent." *Id.* In *Hunt Oil,* we reversed the Commission's interpretation of an area rate clause based on the Commission's failure to consider extrinsic evidence of intent. As in the

12

present case, the Commission concluded that the extrinsic evidence of the parties' intent was inconclusive and thus based its interpretation solely on the language of the clauses.[4]   We concluded that the Commission's methodology was defective because "*Pennzoil I* does not permit ambiguities or conflicts to negate consideration of any part of the overall picture." *Id.*   The Commission thus erred in discarding the extrinsic evidence in the instant case based on its conclusion that the evidence was "inconclusive."

The Commission's approach is also inconsistent with state law to the extent that it narrowly focuses on specific phrases in the area rate clauses without considering the language of the clauses and contracts as a whole.  Oklahoma law requires courts to consider a contract as a whole "without narrowly concentrating upon some phrase or language taken out of context." *Bonner v. Oklahoma Rock Corp.,* 863 P.2d 1176, 1184 (Okla.1993);  *see also* Okla.Stat.Ann. tit. 15, § 157.  The Commission acknowledged that the references to administrative rate-making and the "just and reasonable" standard in the GHK and Sun contracts supported NICOR's contention that the contracts did not authorize § 108 incentive-based rates.  However, the Commission decided that the contracts authorized § 108 prices based on the presence of the phrase "successor governmental authority."  Thus, the Commission essentially treated this phrase as dispositive without considering the language of the area rate

---

[4]*Hunt* does not indicate whether the Commission applied Opinion 77's three-prong formula.

13

clauses as a whole.

Finally, we agree that the Commission erred by relieving Scarth of his burden of proving by a preponderance of the evidence that the area rate clauses authorized § 108 rates. In applying Opinion 77, the Commission essentially shifted the burden of proof by requiring NICOR to prove the absence of contractual authority for § 108 rates. The ALJ concluded that Scarth failed to satisfy his burden of proof with regard to the extrinsic evidence of intent. Although the Commission accepted this finding, it applied Opinion 77's three-part formula because NICOR failed to prove that the parties mutually intended to limit rate increases to cost-based rates:

> Scarth failed to prove a mutual intent to authorize the payment of incentive rates. However, *this also means that NICOR did not prove by a preponderance of the evidence that the parties had the mutual intent to limit area rate clause price escalations to only cost-based rates.* Under the procedures established in Opinion No. 77, to win the case at the evidentiary stage and not reach the interpretive standards, NICOR had to prove by extrinsic evidence that its alleged intent was shared by each of the producer/sellers.

66 FERC at 61,771 (emphasis added). Moreover, in applying Opinion 77's interpretive formula, the Commission essentially created a presumption in favor of Scarth. The Commission held that, as a general rule, area rate clauses authorize § 108 rates unless the language of the clauses satisfy all three prongs of Opinion 77's interpretive formula. 63 FERC at 61,184.

The Commission's allocation of the burden of proof conflicts with this court's holding in *Pennzoil I* that the producer bears the burden of proving that an area rate clause authorizes

14

incentive-based rates under the NGPA.  645 F.2d at 370.  Scarth's failure to prove by a preponderance of the extrinsic evidence that the parties mutually intended to allow non-cost-based rates would have resulted in a judgment in favor of NICOR in Oklahoma state court.  *See* 5A Corbin on Contracts § 1230 at 511 (1964).  When the Commission relieved Scarth of this burden by turning to Opinion 77's interpretive formula, the Commission failed to comply with *Pennzoil I* and state contract law.

We conclude, therefore, that the Commission failed to follow state contract in construing NICOR's area rate clauses.  Based on the findings in the ALJ's order and the Commission's original order affirming the ALJ, Scarth failed to prove by a preponderance of the evidence that the contracting parties intended to authorize § 108 prices.  Scarth thus failed to meet his burden of proof under Oklahoma contract law and *Pennzoil I.*  We therefore VACATE the Commission's order and REMAND the case to the Commission for entry of an order denying Scarth's request for a rate increase.  *See Hunt Oil,* 853 F.2d at 1233.

VACATED and REMANDED.