United States Court of Appeals,

Fifth Circuit.

No. 92-2929.

IRWIN COMPANY, INC., Plaintiff-Appellant,

v.

3525 SAGE STREET ASSOCIATES, LTD., Defendant,

v.

Robert B. REICH, U.S. Department of Labor, Secretary of Labor,
Third-Party Defendant-Appellee.

Nov. 4, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before POLITZ, Chief Judge, JONES, Circuit Judge, and FULLAM[*],
District Judge.

EDITH H. JONES, Circuit Judge:

A subcontractor who underpaid employees appeals the district
court judgment ordering it to tender, to the Department of Labor
for distribution to the underpaid employees, monies that had been
withheld by the general contractor, 826 F.Supp. 1067.  We affirm.

BACKGROUND

The facts in this case are undisputed.  3525 Sage Street
Associates, Ltd. (Sage) was the developer, and later prime
contractor, on a federally-assisted construction project, whose
loan was insured by the Department of Housing and Urban Development
(HUD).  Irwin Company was hired as a plumbing and air conditioning
subcontractor.  As part of its loan contract with the government,

_____

[*]District Judge of the Eastern District of Pennsylvania,
sitting by designation.

1

Sage agreed that laborers and mechanics would be paid prevailing wages as determined by the Secretary of Labor pursuant to the National Housing Act, 12 U.S.C. § 1715c(a) and the Davis-Bacon Act, 40 U.S.C. § 276a. Contractors and subcontractors hired by Sage agreed in their contracts to pay prevailing wages under these terms.

Irwin completed its contract May 23, 1986. On October 8, 1986, Sage paid off the HUD loan on the project. Pursuant to the terms of Irwin's subcontract, however, Sage withheld approximately ten percent of the contract price as retainage pending Sage's approval of Irwin's work and its satisfaction that Irwin "ha[d] fully performed [its] obligations," which included paying its laborers the requisite prevailing wages. For present purposes, the withheld payments equalled $107,522.

At some point—it is not clear when—the Department of Labor investigated Irwin's employment practices under these subcontracts and determined that Irwin had underpaid its employees. On May 12, 1988 that Department sent Irwin and Sage notification letters regarding its findings. Sage, subject to joint and several liability for Irwin's underpayments, did not request a hearing and the investigation findings became final as to it. Significantly, Sage agreed with DOL to release the retainage monies it was holding on Irwin's subcontract, but Irwin resisted this solution. Irwin requested an administrative hearing to contest the findings. On November 1, 1990, the administrative law judge (ALJ) issued his decision and order finding Irwin liable for underpayments in an

amount totalling $136,024.72. Irwin did not appeal this decision, which is now final and unappealable.

Meanwhile, in December 1986 Irwin had filed an action in Texas state court against Sage for release of the payments that Sage had retained. Sage tendered the disputed monies to the court, apparently in January 1988. Irwin then posted a combination of bonds and a letter of credit (which later expired) and obtained control of the tendered monies. In December 1991 Sage brought in the Secretary of Labor as a third-party defendant. In January 1992 the Secretary removed the case to federal court.

In district court, Irwin and the Secretary presented cross motions for summary judgment. The district judge held that Sage had retained the disputed money for the benefit of Irwin employees, that Irwin did not have a property interest in the money, and that the instant case was therefore essentially a collection suit based on liability found by the ALJ.

DISCUSSION

Irwin presents two grounds for reversal of the district court's summary judgment. Irwin asserts that the Secretary is barred from claiming this money by the statute of limitations, and more broadly, that the Secretary has no statutory or regulatory authority to pursue this action.

**Statute of Limitations**

Actions for unpaid minimum wages brought under the Davis-Bacon Act are governed by section 6(a) of the Portal-to-Portal Act, which requires that a claim be commenced within two years after the

3

cause of action accrued, except in a cause of action arising out of a willful violation, which must be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). Because Irwin completed its contract by May 23, 1986, Irwin contends that any claim the Secretary had prescribed after May 23, 1989 at the latest.

The Secretary asserts that this action technically is brought not under the Davis-Bacon Act, but under the National Housing Act pursuant to regulations issued by the Secretary. *See* 29 C.F.R. § 5.5 (1993). The Department issued these regulations pursuant to Reorganization Plan No. 14, prepared by President Truman in 1950 pursuant to a declaration by Congress. Under the Reorganization Plan, the President directed the Secretary to promulgate and coordinate administrative matters for the Davis-Bacon Act and its related statutes. This case arises under one of those Related Acts, the National Housing Act of 1934. 12 U.S.C. § 1715c(a) (requiring as a prerequisite to obtaining federal loan or mortgage insurance that contractors certify that laborers and mechanics "have been paid not less than the wages prevailing in the locality ... as determined by the Secretary of Labor, in accordance within the Davis-Bacon Act.")

The only case cited to us discussing this issue is *Glenn Electric Co. v. Donovan,* 755 F.2d 1028 (3d Cir.1985), which held that the Portal-to-Portal Act applied to actions brought under the Davis-Bacon Act, but not to actions brought under the Related Acts, *i.e.,* those that refer to prevailing wages as determined under the

4

Davis-Bacon Act.  *Glenn Electric* rejected the argument that reference in the Related Acts to the Davis-Bacon Act incorporated the Davis-Bacon Act *in toto* and held that as a matter of statutory construction, the limitations provisions in the Portal-to-Portal Act did not extend to the Related Acts.  Instead, the Third Circuit held that actions brought under the Related Acts are subject to the general limitations period for actions founded on contracts brought by the government, 28 U.S.C. § 2415, which is ordinarily six years. There is an exception to the six-year limitation where the government raises a claim against an opposing party which has itself brought a claim arising out of the same transaction or occurrence.  28 U.S.C. § 2415(f).  The Secretary contends that we should follow the Third Circuit and apply § 2415.

Irwin presents sensible arguments for universal application of the Portal-to-Portal Act limitation period in all cases contesting Davis-Bacon prevailing wages.  The regulations explicitly govern both the Davis-Bacon Act and Related Acts.  29 C.F.R. § 5.1. Moreover, the Supreme Court has recognized that the goal of President Truman's reorganization plan "was to introduce consistency into the administration and enforcement of the Act and related statutes...." *Universities Research Ass'n Inc. v. Coutu,* 450 U.S. 754, 783, 101 S.Ct. 1451, 1468, 67 L.Ed.2d 662 (1981).  On the other hand, the Third Circuit in *Glenn Electric* presents cogent arguments for adopting the longer limitations period.  As there is much to be said for a uniform approach among the circuits, we adhere to the *Glenn Electric* approach.

5

Irwin raises as a related question whether the Secretary has even submitted a claim in this case. She has not filed a complaint nor a formal cross-claim. In her answer, however, the then-Secretary Lynn Martin stated "the only claim the Department of Labor has to prosecute against Irwin Company, Inc. and 3525 Sage Street is their joint and several liability for those back wages." The answer went on in its final paragraph to state

> WHEREFORE, having fully answered, [the Secretary] prays for judgment in her favor in releasing the $107,552.01 paid into the registry of the state court by [Sage] to her for back wages owed due to Irwin['s] violations of the Davis-Bacon Act, 40 U.S.C. § 276a *et seq.* as determined by the Administrative Law Judge ... and that she be awarded attorney's fees and costs, [and] all other and further relief as may be necessary and appropriate.

This is hardly a model of good legal draftsmanship, but it suffices, under the liberal approach of the Federal Rules of Civil Procedure, to assert the Secretary's request for affirmative judicial relief.[1]

Existence of A Cause of Action

Irwin argues that under *U.S. v. Capeletti Brothers, Inc.,* 621 F.2d 1309 (5th Cir.1980), the Davis-Bacon Act does not grant the Secretary a right to pursue an action on behalf of underpaid employees. In *Capeletti,* a class action was filed on behalf of

---

[1]The Secretary also contends that the "claim" was effectively filed with the issuance of a "charging letter" sent prior to the administrative hearing. The terms of the statute of limitations urged by the Secretary, however, bar an action "unless the complaint is filed ... within one year after final decisions have been rendered in applicable administrative proceedings." 28 U.S.C. § 2415(a). These terms effectively rebut the Secretary's argument that the charging letter served as a complaint for limitations purposes.

6

ironworkers allegedly underpaid under a contract financed in part by the federal government. The contract was subject to the Davis-Bacon Act by virtue of the Federal Water Pollution Control Act, 33 U.S.C. § 1372. Thus, *Capeletti* was brought pursuant to a Related Act just as is the instant case. The court analyzed the case as a Davis-Bacon Act claim, found that Congress had expressly provided a set of particular remedies under the Davis-Bacon Act, and held that no private cause of action existed under that Act to sue employers.

The district court agreed with the Secretary that under these facts *Capeletti* is inapposite, and that this lawsuit is essentially a collection suit based on violations previously found. In the context of this case, we agree. We do not speculate further than the facts before us.

Contrary to Irwin's assertions, the Secretary has engaged in no bold, overreaching action by making a claim to Sage Street's retainage held for Irwin. The Secretary pursued appropriate administrative procedures against both Sage Street and Irwin, and her adverse determinations were never appealed. As a result, Sage Street became jointly and severally liable to the Secretary for Irwin's underpayments of the prevailing wage. Rather than face this liability alone, Sage Street employed its contractually authorized right to withhold retainage from Irwin to cover a large portion of the assessment. It is true that the Secretary, having paid out all of the contract monies to Sage Street, could no longer withhold payments from Sage Street on the challenged project

7

pursuant to 29 C.F.R. § 5.5(a)(2). The Secretary did, however, have the power to offset Sage Street's liability against any other government contracts in which Sage Street participated or to seek debarment of Sage Street from further federal contract work until the wages were properly paid. 29 C.F.R. § 5.5(a)(2); § 5.12. Sage Street had every incentive to cooperate with the Secretary's enforcement of her order. By withholding Irwin's retainage from this project for Irwin's default under its contractual obligation to comply with the Davis-Bacon wage rates, Sage Street availed itself of a permissible state law contractual remedy. Sage Street then impleaded the Secretary as the ultimate recipient of the funds (for the benefit of the workers). The end result is no different than would have occurred if the Secretary had more timely investigated Irwin's practices and had herself effected a withholding of Irwin's contract payments. That Sage Street rather than the Secretary directly withheld the funds owed on the project in question is immaterial.

Further, it is absurd to suggest that the Secretary, after being hailed into court by Sage, was without authority to assert her claim to the fund. Irwin contends that such action is not available to the Secretary. By the same logic, however, if Irwin had appealed the Secretary's adverse determination, she could not have counterclaimed for enforcement of her order because there is no regulation that specifically authorizes it. *See Glenn Electric,*

*supra.*[2]  On the contrary, we believe it is a necessary incident of the Secretary's authority that she, like any other litigant, may defend her position when she becomes a defendant in court on a claim such as this.

As this discussion implies, Irwin's reliance on *Capeletti* is misplaced.  The Secretary is not a private litigant seeking an implied remedy under the Davis-Bacon Act or related acts.  Thus, neither *Capeletti* nor the Supreme Court's decision in *University Research Association, Inc. v. Coutu, supra,* directly applies.  The policies underlying the decision whether to imply a private right of action to enforce a federal statute are entirely different than those pertaining to the scope of a federal agency's enforcement of its statutorily created duties.  In *Capeletti,* the ironworkers sought either to duplicate or circumvent the Secretary of Labor's administrative proceeding, whereas in this case, the Secretary seeks to enforce the outcome of an appealed administrative determination.  Further, as was previously noted, in defending her position as a claimant to Irwin's retainage funds, the Secretary did not overstep her regulations, because of her continuing

---

[2]The Secretary also argues that Sage held the monies in a constructive trust for the underpaid employees, and that Irwin has no property interest in these monies.  To support this argument, the Secretary cites *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).  *Pearlman,* however, is distinguishable in three important respects.  First, it focused on a surety's right of subrogation for underpayments it had paid to employees.  Second, the underpaying bankrupt employer in *Pearlman* never obtained control over the disputed monies, which had been properly withheld by the government and tendered to the bankruptcy trustee.  Finally, there was never a question whether the surety had a cause of action against the trustee.

authority over Sage. Sage was persuaded to withhold funds from Irwin to reduce their joint liability to DOL on the project.

It is unfortunate that the Secretary did not expeditiously determine Irwin's underpayment in the first place, so that DOL initially could have withheld contract funds according to the letter of the regulations. It is even more distasteful, however, that Irwin contrived to put its hands on the impleaded retainage funds by posting a bond that it later permitted to expire before this lawsuit could be completed. Irwin's dissipation of the retainage should not be allowed to prevent the Secretary from obtaining a judgment for the underpayments. In short, while *Capeletti* would have added an entirely new dimension to enforcement of prevailing wage rates, the instant action, and the judgment to which the Secretary has become entitled, are but an outgrowth of the unusual procedural posture of this particular lawsuit.

For these reasons, the judgment of the district court is **AFFIRMED.**