Melissa NICOLAS, Individually and on behalf of All Other Persons Similarly Situated, Plaintiffs,

v.

DEPOSIT GUARANTY NATIONAL BANK, Defendant.

Civ.A. No. 1:97CV186GR.

United States District Court, S.D. Mississippi, Southern Division.

Jan. 13, 1998.

Alfred Lee Felder, Alfred Lee Felder, Attorney, McComb, MS, James W. Kitchens, Kitchens & Ellis, Jackson, MS, Margaret Parish Ellis, Kitchens & Ellis, Pascagoula, MS, Lawrence E. Abernathy, III, Lawrence E. Abernathy, III, Attorney, Laurel, MS, for Plaintiff.

Ross F. Bass, Jr., Eric Thurston Hamer, Phelps Dunbar, Jackson, MS, for Defendant.

GEX, District Judge.

## *MEMORANDUM OPINION*

This cause is before the Court on the motion for summary judgment filed by Deposit Guaranty National Bank [Deposit Guaranty] [7–1], the plaintiff's motion for leave to amend her complaint [6–1], and the plaintiff's motion for an extension of time to file motion for class certification [10–1]. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds, for reasons set forth below, that the defendant's motion should be granted and the plaintiff's motions denied.

### *Statement of Facts*

The plaintiff, Melissa Nicolas, filed a complaint against Deposit Guaranty regarding its imposition of a $20.00 nonsufficient funds fee [NSF] for items presented when her checking account lacked sufficient funds to cover checks drafted on the account. Nicolas alleges two federal causes of action arising under the Truth–in–Lending Act [TILA] and the National Bank Act, state claims of usury, negligence, and unjust enrichment. In addition to the above causes of action, Nicolas seeks declaratory relief. In January 1996, Nicolas opened a Guaranty First checking account at Deposit Guaranty's branch located in Laurel, Mississippi. She signed a signature card, which incorporated the terms of the personal depositor agreement as follows:

> By signing this signature card as an authorized user, you agree to all of the terms of Deposit Guaranty National Bank's Personal Depositor Agreement for the account type shown above, and acknowledge that you have received a copy of that agreement.

(Def.'s Mot. for Summ. J., Exh. A.) Deposit Guaranty submits the affidavit of Vanessa Farragut, who states that, at the time the account was opened, she explained the terms of the account to Nicolas and provided her with various materials, including the personal account disclosure and depositor agreement in accordance with her routine practice. (*Id.;* Exh. 1.) With regard to overdraft items, the personal depositor agreement provided the following options to Deposit Guaranty:

> The Bank may determine whether your Account contains sufficient funds to pay a check or other item at any time between the time the check or other item is received by the Bank and the Bank's return deadline, and only one determination of the Account balance is required. *If that determination reveals insufficient funds to pay the check or other item, the Bank will not be required to honor the check or other item and may return it. Alternatively, the Bank may honor the check or other item and create an overdraft.* If the Bank elects to pay your Account in the overdraft on any one or more occasions, it shall not be considered a waiver of the Bank's rights to refuse to do so at any other time nor shall it be an Agreement by the Bank to pay other checks or other items in the overdraft.

(*Id.;* Exh. C–1, at ¶ 3.12 (emphasis added).) The agreement further provided for the imposition of an NSF fee as follows:

> Anytime your Account (including any available deposit or credit account approved to provide overdraft protection) does not contain sufficient funds to pay checks, drafts or other debits presented to the Bank for payment, the Bank *will charge a fee* to your Account for each item presented, even if the Bank does not pay those items. *You agree to pay the Bank's current fees for non-sufficient funds processing as provided in the Personal Accounts Disclosure for your Account, and agree to deposit sufficient funds to cover any overdraft and unpaid fees upon notice of the overdraft.*

(*Id.* (emphasis added).) In its schedule of miscellaneous service fees, the personal account disclosure listed an NSF processing fee of $20.00, to be charged both when an NSF check is paid ("Overdraft Charge") or when an NSF check is not paid ("Return Charge"). (*Id.;* Exh. C–2.)

On or about June 17, 1996, Nicolas converted from a Guaranty First checking account to a GuarantyPak checking account. (*Id.;* Exhs. 2, 2–E.) Nicolas was subject to the same terms set forth in the depositor agreement and account disclosure, but was

given an opportunity to apply for overdraft protection. (*Id.*) Nicolas indicated on a form supplied by Deposit Guaranty that she did not want overdraft protection. To obtain overdraft protection, Nicolas would have been required to fill out an application for credit approval and sign an overdraft protection agreement. (*Id.;* Exhs. 2, 2–F, 2–G, 2–H.) On or about February 19, 1997, Nicolas changed the style of her account to include her husband. (*Id.;* Exhs. 2, 2–I, 2–J.) A new signature card was signed by Nicolas and her husband. (*Id.*) Between February 19, 1996, and June 18, 1997, Nicolas presented 24 NSF checks. (*Id.;* Exhs. 2–K, 2–L.) Deposit Guaranty honored 21 and returned 3 checks. (*Id.;* Exhs. 2–I, 2–K, 2–L.) Deposit Guaranty charged the $20.00 NSF processing fee for all 24 checks. (*Id.*)

### Standard of Review

Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1, 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted). A grant of summary judgment, however, is appropriate only when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Stated differently, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. *Catrett,* 477 U.S. at 322, 106 S.Ct. 2548.

### Legal Analysis

#### I. TILA

■ In her complaint, Nicolas alleges that the NSF fees violate the TILA, 15 U.S.C. § 1601, *et seq.* In her motion to amend, Nicolas has dropped her TILA claim and therefore concedes that the claim lacks mer-

it. Because the Court finds at a later point in this analysis that the motion to amend should be denied, the Court addresses the merits of the TILA claim. Congress passed the TILA to achieve the following legislative ends:

> It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a); *see* Regulation Z, 26 C.F.R. § 226.1, *et seq.; Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 220, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). "The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers." *Fairley v. Turan–Foley Imports, Inc.,* 65 F.3d 475, 482 (5th Cir.1995).

■ Although the instant dispute arises from Nicolas' depository agreement, she does not allege a separate breach of contract claim. For reasons discussed below, however, the Court finds that the issue is relevant to the instant claims. Subject to public policy embedded in federal or state law, "[a] court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State of Mississippi,* 651 So.2d 1060 (Miss.1995). In such cases, "the contract must be interpreted according to its terms" or "construed exactly as written." *Foreman,* 770 F.2d at 489 (citation omitted). On the other hand, if terms of a contract are ambiguous, they are construed against the drafter. *See, e.g., Clark v. Carter,* 351 So.2d 1333, 1336 (Miss. 1977). As addressed further below, the terms of an otherwise enforceable contract may be abrogated by a supervening federal statute or regulation. *See, e.g., Nicor Exploration Co. v. F.E.R.C.,* 50 F.3d 1341, 1347 (5th Cir.1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 702, 133 L.Ed.2d 658 (1996); *Irwin Co., Inc. v. 3525 Sage Street Associates, Ltd.,* 37 F.3d 212, 215 (5th Cir.1994); *Long v. Shultz Cattle Co., Inc.,* 881 F.2d 129 (5th Cir.1989); *Laredo Offshore Constructors,*

*Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir.1985). The Court therefore determines to what extent Nicolas is bound by the terms of her depository agreement and whether the agreement violates the TILA.

■ The Court finds that the terms of the depository agreement are not ambiguous. The record shows that Deposit Guaranty had a standard practice of providing account holders with copies of the account agreement and account disclosure. The record further shows that the documents were provided to Nicolas. Although Nicolas apparently seeks to evade her contractual obligations by stating that she did not read the terms of the agreement, it is clear from her signature representing that she received the documents and that she agreed to their terms that she has waived any argument that she did not read the documents. The Court therefore finds that unless the agreement providing for an NSF charge is subject to modification or rescission in light of public policy, it is enforceable according to its terms.

■■ Regulation Z requires creditors to disclose the "finance charge" that debtors are required to pay. *See* 12 C.F.R., part 226; 61 Fed.Reg. 49237, 49237–38 (September 19, 1996). Fees that are not finance charges do not trigger TILA's regulatory provisions. *See* 12 C.F.R. § 226.1(c)(1); *Taylor v. Union Planters Bank of Southern Mississippi*, 964 F.Supp. 1120 (S.D.Miss.1997). In *Taylor, supra*, the court held that a daily overdraft fee of $5.00, charged to checking account customers when their accounts became overdrawn, was not a "finance charge" as defined by Regulation Z where the parties did not agree in writing that the banks would pay items on overdrawn accounts. *Taylor*, 964 F.Supp. at 1123–24. The plaintiffs in *Taylor* further conceded that the onetime $20.00 NSF fee, at issue in this case, was not a finance charge. *Id.* at 1123 n. 1.

The *Taylor* court considered, *inter alia*, the following regulation:

**(c) Charges excluded from the finance charge.** The following charges are not finance charges:

. . . .

(3) Charges imposed by a financial institution for paying items that overdraw an account, *unless the payment of such items and the imposition of the charge were previously agreed upon in writing.*

12 C.F.R. § 226.4(c)(3) (Current through September 23, 1997) (emphasis added). The court further considered the following commentary invoked by the defendant:

**Assessing interest on overdraft balance.** A charge on an overdraft balance computed by applying a rate of interest to the charge amount of the overdraft is not a finance charge, even though the consumer agrees to the charge in the account agreement, *unless the financial institution agrees in writing that it will pay such items.*

Official Commentary to Regulation Z, Comment 4(c)(3)–1 to 12 C.F.R. § 226.4 (emphasis added), *reprinted in*, 3 FED.BANKING L. (CCH) ¶ 27,771 at 28,948 (1995). In light of the above, the *Taylor* court found that the daily overdraft fee was not a finance charge and dismissed the lawsuit. *Taylor*, 964 F.Supp. at 1124.[1]

Although the issue was not reached in *Taylor*, the Court finds that for similar reasons the NSF fee is a not a finance charge. The fee, by express design, has nothing to do with a financing agreement. The depository agreement provides that the $20.00 NSF fee is imposed without regard to whether NSF checks are paid or returned. The mere fact that Deposit Guaranty could elect to pay NSF checks does not convert the $20.00 fee into a finance charge. It follows that the TILA claim collapses as a matter of law.

## II. *National Bank Act; Usury*

■ Nicolas further contends that, even if the NSF fee does not trigger relief under the TILA, it constitutes a finance charge as defined by section 75–17–25 of the Mississippi

---

1. In *Sims v. Union Planters Bank of Northeast Mississippi, N.A.*, 1997 WL 170309 (N.D.Miss. 1997), the court similarly held that a $5.00 daily overdraft fee was not a finance charge. The plaintiff in *Sims*, as in *Taylor*, conceded that the $20.00 overdraft fee, at issue in this case, was not a finance charge.

Code, and interest in violation of the National Bank Act, 12 U.S.C., § 85, *et seq.* Based on the above arguments, Nicolas contends that the $20.00 NSF fee violates both the National Bank Act and Mississippi's usury laws. *See* MISS.CODE ANN. § 75–17–1(2). The *Sims* and *Taylor* courts, *supra*, mentioned but did not resolve these issues. *See Sims*, 1997 WL 170309, at *2; *Taylor*, 964 F.Supp. at 1124.

On September 29, 1997, the Court granted a motion for leave to file statement of interest as *amicus curiae* filed by the Office of the Comptroller of the Currency, United States Department of Treasury [OCC]. In its brief, the OCC takes the position that the imposition of an NSF fee without regard to whether NSF items are paid is not interest and does not violate the National Bank Act or Mississippi usury law. In the following analysis, the Court considers the findings of the OCC on the above issues.

As conceded by Nicolas, the term "interest" is defined under the National Bank Act as follows:

> **(a) Definition.** The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees *connected with credit extension or availability:* numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees …

12 C.F.R. § 7.4001(a) (1997) (emphasis added). The OCC contends that, because the NSF fee was not imposed in connection with a credit transaction, the fee is not interest as defined by the National Bank Act. The Court agrees. It is clear that the fee arises from the terms of the depository agreement. As noted by the OCC, these kinds of charges are addressed by a separate federal regulation, which reads as follows:

> **§ 7.4002 National bank charges.**

> (a) Customer charges and fees. A national bank may charge its customers non-interest charges and fees, including deposit account service charges …

> (b) Considerations. The establishment of non-interest charges and fees, and the amounts thereof, is a business decision to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A bank reasonably establishes non-interest charges and fees if the bank considers the following factors, among others:

> (1) The cost incurred by the bank, plus a profit margin, in providing the service;

> (2) The deterrence of misuse by customers of banking services;

> (3) The enhancement of the competitive position of the bank in accordance with the bank's marketing strategy; and

> (4) The maintenance of the safety and soundness of the institution.

> (c) Interest. Charges and fees that are "interest" within the meaning of 12 U.S.C. § 85 are governed by § 7.4001 and not by this section.

12 C.F.R. § 7.4002(a–c). Deposit Guaranty has provided sufficient evidence, unrefuted by Nicolas, showing that the NSF fee substantially satisfies the above reasonableness factors. *See Wallace v. Bank of Bartlett*, 55 F.3d 1166 (6th Cir.1995) (addressing similar factors set forth by repealed 12 C.F.R. § 7.8000), *cert. denied*, 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996).

It follows that Nicolas' reliance on *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 116 S.Ct. 1730, 1733, 135 L.Ed.2d 25 (1996), which merely cited with approval language in section 7.4001, is misplaced. The *Smiley* court held that the term "interest," as construed within the meaning of the National Bank Act, permits national banks to charge their loan customers "interest" at the rate allowed by the laws of the state where the bank is located. Although *Smiley* did not address NSF fees specifically, nothing in that decision abrogates Deposit Guaranty's position.[2] For the above reasons, the Court

---

**2.** The fees at issue in *Smiley* were credit-card late-payment fees, which clearly were imposed in connection with credit extension or availability. The facts in this case show otherwise. It follows

finds that the NSF fee is not interest within the meaning of the National Bank Act.

 Although the Court need go no further, the Court observes that, even assuming *arguendo* the NSF fee is deemed to be interest as defined by the National Bank Act, the remedial provisions of the Act are not triggered unless the fee also violates Mississippi usury laws. As addressed in *Smiley*, the National Bank Act allows a national bank to charge "interest at the rate allowed by the laws of the State ... *where the bank is located.*" 12 *U.S.C.* § 85 (emphasis added). In a previous interpretative ruling, the OCC provided the following:

> The definition of interest in § 7.4001 is intended to define "interest" for purposes of determining if a particular charge is subject to 12 U.S.C. § 85. Charges that fall within the Federal definition of "interest" are subject to 12 U.S.C. § 85 and its "most favored lender" and exportation rules ...
>
> Section 7.4001(b) clarifies that, under the ruling (and 12 U.S.C. § 85), one looks to state law to determine what lending charges are permitted for the most favored lender, and thus, also for national banks under 12 U.S.C. § 85. However, *the Federal definition of "interest" generally does not affect state law definitions of "interest" or the manner in which state law calculates the amount of interest being charged.*
>
> . . . .
>
> OCC has added to § 7.4001 a new paragraph (c) that includes a clarifying sentence confirming that the Federal definition of the term interest does not change a state's definition of interest (nor how the state definition of interest is used) solely for purposes of state law ...

61 Fed.Reg. 4849, 4858 (February 9, 1996) (emphasis added); *see* 12 C.F.R. § 7.4001(c).

The Court therefore looks to Mississippi law to determine whether the NSF fee falls within the framework of Mississippi's statutory scheme regulating finance charges and interest rates. The Mississippi Code prohibits the imposition of finance charges that result in usurious interest rates:

> (2) Any borrower or debtor may contract for and agree to pay a finance charge for any loan or other extension of credit made directly or indirectly to a borrower or debtor which will result in a yield not to exceed the greater of ten percent (10%) per annum or five percent (5%) per annum above the discount rate, excluding any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the lender is located, each calculated according to the actuarial method. The rate of finance charge authorized under this subsection (2) shall be known as the "contract rate."

MISS.CODE ANN. § 75–17–1(2) (Supp.1996). The term "finance charge" is further defined by section 75–17–25, which reads as follows in pertinent part:

> **§ 75–17–25. Meaning of "finance charge"; exclusion of prepayment penalties and default charges; effect of excessive finance charge.**
>
> The term "finance charge" ... means the amount or rate paid or payable, directly or indirectly, by a debtor for receiving a loan or incident to or *as a condition of the extension of credit,* including, but not limited to, interest, brokerage fees, finance charges, loan fees, discount, points, service charges, transaction charges, activity charges, carrying charges, time price differential, finders fees or any other cost or expense to the debtor for services rendered or to be rendered to the debtor in making, arranging or negotiating a loan of money or an extension of credit and for the accounting, guaranteeing, endorsing, collecting and other actual services rendered by the lender ...

MISS.CODE ANN. § 75–17–25 (Supp.1996) (emphasis added).

Nicolas attempts to trigger relief under the National Bank Act by invoking section 75–17–25. The Court has not uncovered a Mississippi decision addressing whether NSF fees of the kind imposed in this case are finance charges governed by section 75–17–25. The Court finds, however, that Nicolas'

that *Smiley* does not, as Nicolas contends, show that the NSF fee is interest.

argument suffers the same infirmity as her TILA claim. As noted by the OCC, it is clear that the NSF fees were not imposed pursuant to a lending transaction. To the contrary, the fees are imposed regardless of whether NSF checks are paid by Deposit Guaranty. Nicolas contends that, because the Mississippi Code does not have a specific provision addressing NSF fees and because statutes exist providing that credit card membership fees and late fees are not finance charges, *see* MISS.CODE ANN. §§ 75–17–19(2), 75–17–27 (Supp.1996), NSF fees are deemed to be interest subject to Mississippi's usury laws. The Court disagrees. The mere fact that NSF fees have not been specifically addressed by Mississippi legislators does not suggest that such fees are deemed to be interest subject to section 75–17–25. Such a result contradicts section 75–17–25's own language, which requires that the fee be imposed as consideration "for receiving a loan or incident to or as a condition of the extension of credit ..." MISS.CODE ANN. § 75–17–25 (Supp.1996). Nicolas further contends that section 75–17–25 specifically states that service charges are finance charges under Mississippi law. Nicolas again fails to account for the statute's language as a whole. Such charges involve services "in making, arranging or negotiating a loan of money or an extension of credit ..." *See* MISS.CODE ANN. § 75–17–25 (Supp.1996). The Court agrees with the position taken by the OCC that in this case the NSF fee is not predicated or conditioned upon, nor is it consideration for, the extension of credit or the making or negotiation of a loan agreement.

In *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285 (Tex.1994), a case addressing Texas usury law, the Supreme Court of Texas held that a similar NSF fee was not interest, reasoning as follows:

> In this case, there is no dispute as to the facts or character of the NSF fees. It is undisputed that each NSF fee was assessed as a processing fee for the additional work required in connection with handling the bad check. It is undisputed in the record that the decision to charge an NSF fee was a separate decision from the decision to honor or dishonor a bad check. There is no dispute that the NSF fee was charged to all customers, in the same amount, regardless of whether First Bank paid or rejected a check. It is undisputed that the amount of the NSF fee had no relationship to the amount of the funds advanced. The fact that the bank officers have authority to waive the NSF fee on occasion does not change the character of these fees. Thus, the NSF fee was not interest on the amount advanced to cover the bad checks. The NSF fees were charged for the costs of processing a check drawn on an account with insufficient funds. The mere profitability of the NSF fee to First Bank does not make the fee usurious interest.

> Each NSF fee was separate and additional consideration for processing each bad check. Thus, the NSF fee was for consideration other than the lending of money. Separate consideration was given to First Bank for the funds advanced to cover the bad checks. The separate consideration was not the NSF fee, but was Tony's implied promise to repay that advance. Based on these undisputed facts, we hold that, as a matter of law, the NSF fees charged in this case were not interest.

*Id.* at 287–88 (citations omitted). Although the decision is not binding, the Court finds that *Tony's*, cited with approval by the OCC, provides persuasive authority regarding how the Mississippi Supreme Court would likely resolve the issue of whether the NSF fee is interest subject to Mississippi's usury laws.

The unrefuted record facts presented by Deposit Guaranty demonstrate that the NSF fee is not imposed as a condition of extending credit. Rather, the rights of the parties are governed by the depository agreement, which expressly provides that the NSF fee would be charged without regard to whether a check is paid on an overdrawn account. The depository agreement implicitly required Nicolas to maintain sufficient funds in her account to support checks that are drawn upon it. Further, the agreement in this case contains, in the very least, an implied promise to repay any amounts paid by Deposit Guaranty in the event it honors NSF checks drawn on the account. The agreement provides in part as follows:

You also agree to reimburse the Bank for *any costs it incurs in collecting an overdraft* from you including, *without limitation,* reasonable attorney fees and the costs of litigation, to the extent permitted by law.

(Def.'s Mot. for Summ. J., Exh. C–1, at ¶ 3.12 (emphasis added).) Nicolas' resulting obligation to repay arises in connection with her failure to deposit funds and not pursuant to the "simple lending of money." *Tony's,* 877 S.W.2d at 287. Only through an overdraft protection agreement, an option Nicolas expressly declined, did Deposit Guaranty lend money on conventional terms to cover overdrafts. It follows that, contrary to Nicolas' argument, the NSF fee is not considered interest merely because Deposit Guaranty exercises its right to seek reimbursement in a civil action for funds it advanced through the payment of NSF checks. Further, Deposit Guaranty's designation of the defendants in those actions as debtors does not, as Nicolas contends, transform the nature of the NSF fee.

For the reasons set forth above, the Court finds that the $20.00 NSF fee imposed by Deposit Guaranty does not violate Mississippi's usury laws or the National Banking Act. Accordingly, the Court finds that Deposit Guaranty is entitled to summary judgment on these issues.

### III. *Negligence*

Because the remaining state claims essentially derive from the same facts, the Court addresses them. *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994). Nicolas alleges that Deposit Guaranty, by engaging in a scheme to charge excessive NSF fees, is liable for negligence. To establish a cause of action for negligence under Mississippi law, Nicolas must prove four elements: duty, breach, causation, and damages. *See Erby v. North Mississippi Medical Center,* 654 So.2d 495, 500 (Miss. 1995). In her motion to amend, addressed below, Nicolas also seeks to add a claim that Deposit Guaranty breached a duty of good faith and fair dealing. Mississippi courts consider the existence *vel non* of fiduciary

duties together with other duties arising from a contractual relationship, including an implied covenant of good faith and fair dealing. *See Carter Equipment Co. v. John Deere Indus. Equipment Co.,* 681 F.2d 386, 392 n. 12 (5th Cir.1982). The Court finds that Deposit Guaranty cannot be liable for the breach of any duty on a theory of negligence. To the contrary, because Deposit Guaranty acted in accordance with the terms of the depository agreement, there is no breach of duty. *See McDonald's Corp. v. Watson,* 69 F.3d 36, 43 (5th Cir.1995) ("a party cannot be guilty of bad faith and unfair dealings when acting in compliance with the terms of a contractual agreement"); *Carter Equipment Co.,* 681 F.2d at 392 n. 14 (in the absence of terms that violate public policy, "activity in conformance with the terms of the contract cannot amount to misconduct that constitutes a breach of a fiduciary duty"). It is well-established that "actions for breach of contract, when styled as a tort, still require proof of a breach of contract." *American Management Corp. v. Dunlap,* 784 F.Supp. 1245, 1249 (N.D.Miss.1992) (citation omitted). The Court therefore finds that, because Nicolas has failed to establish the elements for a claim of negligence, Deposit Guaranty is entitled to summary judgment on this issue.

### IV. *Unjust Enrichment*

Nicolas alleges that she is also entitled to damages based on the doctrine of unjust enrichment. In cases involving contractual disputes, the doctrine of unjust enrichment applies "where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain …" *Milliken & Michaels, Inc. v. Fred Netterville Lumber Co.,* 676 So.2d 266, 269 (Miss.1996) (citation and internal quotation omitted). This not such as case. The Court therefore finds that recovery is not available under this theory. Alternatively, even assuming *arguendo* the doctrine is considered in this case, the above analysis makes clear that Deposit Guaranty owes nothing to Nicolas because Deposit Guaranty was not unjustly enriched. Deposit Guaranty imposed the NSF fees in accor-

dance with the depository agreement. Further, no public policy or equitable concerns are implicated. The Court therefore finds that summary judgment is warranted with regard to Nicolas' unjust enrichment claim.

## V. *Declaratory Relief*

Deposit Guaranty correctly asserts that, to obtain declaratory relief, Nicolas must present an actual case or controversy. *See* 28 U.S.C. § 2201(a); *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *State of Tex. v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *Chevron U.S.A., Inc. v. Salsman*, 582 F.Supp. 1174, 1179 n. 4 (M.D.La.), *aff'd*, 750 F.2d 67 (5th Cir.1984). Deposit Guaranty contends that, if the Court grants summary judgment, this will put an end to the controversy and thereby eliminate the need for a declaratory judgment. The Court agrees that, because the instant claims lack merit, Nicolas is not entitled to declaratory relief.

## VI. *Motion to Amend*

Nicolas has filed a motion to amend in which she seeks to drop her TILA claim and add an allegation that Deposit Guaranty breached a duty of good faith and fair dealing. Federal Rule of Civil Procedure 15(a) provides that once a responsive pleading has been filed, a party may amend a pleading "only by leave of court" and that "leave shall be freely given when justice so requires." FED.R.CIV.P. 15(a). Under Rule 15(a), the Court need not grant leave to amend if it would do nothing but "prolong the inevitable." *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). As set forth above, any amendment to the instant complaint would be futile because Nicolas' allegations are meritless. The Court therefore finds that her motion to amend should be denied.

## VII. *Motion for an Extension of Time*

Nicolas has filed a motion for an extension of time to file a motion for class certification. Uniform Local Rule 13 of the United States District Courts for the North-

ern and Southern Districts of Mississippi provide as follows in pertinent part:

> In all lawsuits filed as class actions, the class plaintiff must, not later than sixty (60) days after filing of answer, move for a Rule 23 class determination....
>
> If additional time is desired for preparation on the Rule 23 issue(s), a motion setting up grounds for the requested delay must be served within the above time period. Delays will be granted only for good cause.

UNIF. LOCAL R. 13. Deposit Guaranty filed its answer on May 23, 1997. Nicolas had until July 22, 1997, to file her motion for class certification. The time for filing a motion for class certification has expired. The Court finds that Nicolas had ample time to file a motion for class certification within the 60–day deadline. The Court further finds that Nicolas has not shown good cause for extending the time. The Court therefore finds that her motion for an extension of time is not well-taken and should be denied. *See Turpeau v. Fidelity Financial Services, Inc.*, 936 F.Supp. 975, 980–81 (N.D.Ga.1996) (denying plaintiff's motion to extend the time for filing motion for class certification where motion was filed two months after 90–day deadline under local rules expired), *aff'd*, 112 F.3d 1173 (11th Cir.1997); *Merrill v. Southern Methodist University*, 806 F.2d 600 (5th Cir. 1986) (refusal to certify class justified in part where plaintiff filed motion for class certification beyond mutually agreed upon deadline for discovery on class certification issues); *Burkhalter v. Montgomery Ward & Co., Inc.*, 676 F.2d 291 (8th Cir.1982) (class action allegations stricken for failure to comply with the court's order fixing time limit for class certification); *Coffin v. Secretary of Health, Education & Welfare*, 400 F.Supp. 953, 956–57 (D.D.C.1975) (refusal to certify class because plaintiff's motion for class action certification was not timely filed pursuant to the local rules).

## Conclusion

For reasons set forth above, the Court finds that the NSF fee charged by Deposit Guaranty is neither a finance charge nor interest as defined by Mississippi law. The

Court therefore finds that Nicolas has failed to establish a genuine issue of material fact with regard to her claims alleging violations of the TILA, National Bank Act, and Mississippi law prohibiting usury. The Court further finds that Nicolas has failed to establish a genuine issue of material fact with regard to her pendent state claims seeking recovery on a theory of negligence and unjust enrichment. Accordingly, the Court finds that Deposit Guaranty's motion for summary judgment [7–1] is well-taken and should be granted. Additionally, the Court finds that Nicolas' motion to amend [6–1] and motion for an extension of time to file a motion for class certification [10–1] should be denied. A final judgment in conformity with this Memorandum Opinion shall issue this date. All parties shall bear their respective costs.

### FINAL JUDGMENT

This cause is before the Court on the motion for summary judgment filed by Deposit Guaranty National Bank [Deposit Guaranty] [7–1]. Also before the Court is the plaintiff's motion for leave to amend her complaint [6–1]. In accordance with the Court's Memorandum Opinion, issued this date and incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED, that the defendant's motion for summary judgment [7–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED, that the plaintiff's federal and pendent state claims be, and are hereby, dismissed with prejudice. It is further,

ORDERED AND ADJUDGED, that the plaintiff's motion for leave to amend her complaint [6–1] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED, that the parties bear their respective costs.